IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLAY CALDWELL, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Civil Action No. 09-217 |
| ) | Judge Terrence F. McVerry/ |
| LOUIS FOLINO, Superintendent; JEAN ) | Chief Magistrate Judge Amy Reynolds Hay |
| W. SCOTT, Business Manager; DAN ) | |
| DAVIS, Superintendents Assistance & ) | |
| Grievance Coordinator; DEAN ) | |
| GEEHRING, Mailroom Supervisor, ) | |
| ) | |
| Defendants ) | |

REPORT AND RECOMMENDATION

Recommendation

It is respectfully recommended that the amended civil rights complaint be dismissed before it is served for failure to state a claim upon which relief can be granted, pursuant to the screening provisions of the Prison Litigation Reform Act.

Report

This case was the subject of a prior Report that recommended dismissal of the originally filed complaint for failure to state a claim upon which relief can be granted. Dkt. [9]. Thereafter, Plaintiff filed a motion for leave to file an amended complaint, Dkt. [10] and a motion for leave to withdraw the case. Dkt. [11]. The motion for leave to file an amended complaint was granted but the motion to withdraw was denied. Dkt. [12]. Plaintiff did not appeal the order to the District Judge. However he did file an amended complaint, Dkt. [14], and a memorandum of law in support. Dkt. [15].

The amended complaint is substantially duplicative of the original complaint and does not cure the deficiencies of the original complaint.  In fact, if anything, it provides less detail about his complaints, especially about which suits he was denied access to the Courts.   The key differences between the original and amended complaints are that Plaintiff added an Eighth Amendment claim, as well as a claim for "mental and emotional injury inflicted," as well as a claim of "Confidentiality" and retaliation in the amended complaint that were not present in the original complaint, and he deleted references to Article 1 Section 9 and Article V, Section 9. Compare Dkt. [5] at 3, ¶ III with Dkt. [14] at 3, ¶ III.  Otherwise, he pretty much repeats his claims against the named defendants, claiming that they "enforced the denying Access to the Court, Legal Material and the mailing of Courts['] Orders to the Courts, as well as the Opening of My legal Mail outside my Presences" [sic], Dkt. [14] at 4, ¶ 1.  See also id., at ¶¶ 2 to3. Plaintiff does seem to emphasize that his "'Confidentiality' with the courts and Lawyers" was violated, citing Exhibits 22 to 55 (i.e., Dkt. [5-3] at 27 to Dkt. [5-4] at 5), which were attached to the original complaint.  Dkt. [14] at 4.

It appears that Plaintiff is claiming a novel right to have "confidential" communications by mail recognized, a right other than the right of "legal mail" in the strict sense as defined by the DOC regulations and as explained in the first Report.  Moreover, he appears to claim that all of his litigation related mail is of this "confidential" nature because he claims "I am my 'own Attorney' 'Pro se' in this case and others so all my mail is 'Considered' legal and Privileged Mail' . . . when in Litigation of Legal Matters in any Courts."  Dkt. [15] at 10.   To the extent that the mail Plaintiff points to as being "confidential" was not properly marked as legal mail, it does not constitute "legal mail" and hence opening it outside his presence violated none of Plaintiff's

recognized rights as explained in the first Report. Moreover, as the first Report noted, none of the mail Plaintiff pointed to in his original complaint that was opened outside his presence came within the rubric of "legal mail." Dkt. [9] at 17 ("Accordingly, Plaintiff's First Amendment rights were not violated because we find that his 'legal' mail was not opened outside of his presence because the mail he indicates was opened outside his presence was not 'legal' mail as that term is essentially defined by DOC and/or as defined by the Third Circuit, repeatedly in various cases."). Thus, even if the mail he pointed to were otherwise "confidential," because it was not "legal mail," opening it outside his presence violated no rights of Plaintiff.

Even if, however, we were to recognize some constitutional right to confidential communications other than what falls within the rubric of "legal mail," it would appear that the communications made must indeed be of a confidential nature to come within such a right. However, none of the exhibits Plaintiff points to would do so. Most of the exhibits that Plaintiff points to are either mail from courts, concerning matters of public record (see, e.g., Dkt. [5-3] at 28, 34, 35, 37, 38, 41, 42, 44, 45, 50, 51, 52, 54, 55, Dkt. [5-4] at 4, 5,) which, by definition are not confidential[1] or mail from opposing counsel in various cases that simply indicate service was made on Plaintiff or that no opposing brief/memo would be filed in court (see, e.g., Dkt. [5-3] at 32, 33, 39, 40) which are either matters of public record and, so again, by definition, not

---

[1] See Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987)("with minute and irrelevant exceptions all correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files. It is therefore not apparent to us why it should be regarded as privileged and how Kimberlin could be hurt if the defendant read these documents before or after Kimberlin does"). Of course, the Third Circuit has already held that mail from the Courts is legal mail, apparently even if the court mail is a matter of public record. See Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir.1995). However, we are not addressing the issue of "legal mail" but rather the Plaintiff's contended for right to "confidential communications" over and above the right to legal mail.

confidential, or simply not confidential communications. Samonte v. Maglinti, Civ. No. 05-00598, 2007 WL 1963697, at *6 (D.Haw. July 3, 2007)("Moreover, mail from the Prosecuting Attorney, by definition Samonte's opposing counsel, rather than mail from his own attorney is not 'legal mail.' *See Keenan*, 83 F.3d at 1094. There is no confidential relationship between a litigant and the opposing attorney, unlike the confidential attorney-client relationship that exists between a litigant and his own attorney. Processing mail from opposing counsel, or, as alleged here, from the Prosecutor, as regular mail instead of as legal mail did not violate Samonte's constitutional rights. Claims relating to these pieces of mail are dismissed with prejudice."). Nor are any of the other exhibits confidential communications. See, e.g., Dkt. [5-3] at 29 (letter from Pennsylvania Institutional Law Project, declining to provide legal assistance); at 30 (letter from U.S. Attorney declining to file criminal charges); at 36 & 53 (copies of docket sheets); at 43 (inmate request to staff); at 46 to 47 (copies of postal forms), etc. Because none of the mail that Plaintiff points to as being "confidential" appears, in fact, to be confidential, any opening and reading of such mail violates none of Plaintiff's rights.[2]

---

[2] See, e.g., Moore v. Hoeven, wherein the Court noted:

> there would only be a violation when the failure to follow *Wolff's* prophylactic procedures resulted in prison authorities reviewing matters that were of a confidential or privileged nature. And that, for example, there would be no violation if prison authorities opened court mail that contained nothing more than copies of documents that are of public record. *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987); *cf. Moore v. Rowley*, 126 Fed.Appx. at 760-761 (*citing Martin v. Brewer* for the proposition that court filings which are a matter of public record are not entitled to special protection). The constitutional interest, to the extent that there is one, is in prison officials not being able to read privileged or confidential information-not simply the failure to follow the procedures employed to help insure this does not take place. *See Kaufman v. McCaughtry*, 419 F.3d 678, 656-658 (7th Cir. 2005) (stating that prison officials who open mail marked with an attorney's name and a warning that the mail is confidential may "potentially" violate the prisoner's rights if opened outside his presence but the court still must find that the contents of the mail were in fact privileged to qualify as

Two of the exhibits to which Plaintiff cites in support of his claims of a right to confidentiality in his mail are simply envelopes with return addresses from a Court of Common Pleas and from the Prisoners' Rights Research Project. Dkt. [5-3] at 27. While it is true that we cannot tell from the envelopes what they contained and, so, given our standard of review, we would have to assume that they contained "confidential communications" (accepting for the sake of argument that there is a right to "confidential communications" outside of and other than the right to legal mail), the dates of those envelopes clearly indicate that they were sent on March 1, 2006, in the case of the Common Pleas Court and on October 13, 2006, in the case of the Prisoner's Rights Research Project. Id. Such demonstrates that even if there is some constitutional right to "confidential communications" other than legal mail, the statute of limitations as to these two pieces of mail ran out long prior to Plaintiff's filing of the present action, which is deemed to have occurred on February 18, 2009, given that Section 1983 has a two year statute of limitations as explained in the first Report.³

It appears that Plaintiff also claims his money was "stolen" from his prisoner account to pay for mail that was never sent or delivered, see Dkt. [14] at 3, ¶ IV.C.("the taking of money for that mailing"; Dkt. [5-3] at 46 ("money stole from my account $9.25 for the first one [and] $4.60 taken for the second civil action"). Specifically, he complains about two civil rights complaints

---

"legal" mail). . . .

Moore v. Hoeven, No. 1:08-cv-028, 2008 WL 1902451 at *12 n. 13 (D.N.D. April 28, 2008).

³ Indeed, this reasoning would bar all of Plaintiff's claims accruing prior to February 18, 2007. Hence, to the extent that Plaintiff attempts to raise any such claims, they should be dismissed for failure to state a claim. See Dkt. [15] at 1 ("the plaintiff has shown . . . the opening of legal mail addressed to plaintiff, Clay Caldwell, who was 'NOT' Present at the time of opening HIS legal mail From 2002 to the present[.]").

that he wished to file and which he allegedly sent out in April 2007 but that he had to send out a second time in May 2007 via his family because the Court never received the two civil rights complaints sent out in April. Those two civil rights complaints were eventually docketed in this Court on May 29, 2007. Dkt. [15-2] at 3. To the extent that he is making a procedural due process claim that his property was taken in the form of monies out of his account but was not applied to pay the postage for the mailings and or that his outgoing mail, which we assume to be his property, was stolen, there is an adequate post deprivation remedy and hence the procedural due process claim fails as a matter of law. Hudson v. Palmer, 468 U.S. 517 (1984); Mills v. Curry, 127 Fed.Appx. 342, 343 (9th Cir. 2005)(where prisoner alleged that "the prison allowed other prisoners to withdraw money from his prison account by fraud and/or forgery[,]" and the prisoner sued the state prison officials, the Court dismissed the procedural due process claim under Hudson). See also Barr v. Knauer, __ Fed.Appx. __, __, 2009 WL 962684, at *2 (3d Cir. April 10, 2009) ("We have previously held that the prison's grievance program and internal review provide an adequate post-deprivation remedy to satisfy due process.")(citing Tillman v. Lebanon County Correctional, 221 F.3d 410, 422 (3d Cir.2000)); Laufgas v. Speziale, 263 Fed.Appx. 192, 198 (3d Cir. 2008) ("the District Court properly dismissed Laufgas's claim that prison officials impermissibly disposed of his personal property, as a prisoner's cause of action based on unauthorized deprivation of property by a state actor is not actionable under section 1983 unless there is no adequate post-deprivation remedy available. As noted by the District Court, Laufgas failed to show that a conversion claim under state law would have provided an inadequate remedy.")(citations omitted); Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (both inmate grievance procedure and state tort law action constituted adequate

6

post-deprivation remedies).   To the extent that Plaintiff means to claim a First Amendment denial of access to the Courts, based upon these facts, he has failed to show any injury as the civil rights complaints that he wished to file, were, in fact, filed and the delay of less than one month in their being filed had no adverse effect on those two suits, both of which were referred to the undersigned.  Caldwell v. Beard, No. 07-727 (W.D. Pa.); Caldwell v. Beard, No. 07-726 (W.D. Pa.).

   Plaintiff's newly minted Eighth Amendment claim fails as a matter of law because none of the allegations of the complaint reveals a sufficiently serious deprivation.  To establish a violation of the Eighth Amendment requires that one be deprived of the "minimal civilized measure of life's necessities." Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992)(internal quotes omitted), *superseded by statute on other grounds as stated in* Ghana v. Holland, 226 F.3d 175, 184  (3d Cir. 2000).  To establish that one has been deprived of the minimal civilized measure of life's necessities requires a demonstration that one has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault.  Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997).

   Instantly, none of the allegations of the complaint reveals such deprivations as is required to state an Eighth Amendment claim.  Hence, any Eighth Amendment claims must be dismissed.

   Plaintiff's newly added retaliation claim fails under Twombly because it is a mere incantation of the word "retaliation" without any supporting allegations.  As the Court in Twombly explained: "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

It is not entirely clear what Plaintiff intended by the addition of "Mental & Emotional Injury Inflicted[.]" Dkt. [14] at 3, ¶ III.  To the extent that he is attempting to state a claim for a violation of state law, as in intentional infliction of emotional distress, the Court recommends declining supplemental jurisdiction.  To the extent that Plaintiff is attempting to establish the requisite injury in order to establish a First Amendment denial of access to Courts claim, the requisite injury must be an injury to a lawsuit, not to Plaintiff's emotional or mental state.

The Court incorporates its earlier Report into this report.

Given that Plaintiff's amended complaint suffers all of the same flaws as his original complaint and that none of the new claims raised in the amended complaint states a claim upon which relief can be granted, the amended complaint must be dismissed pre service pursuant to the PLRA screening provisions.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation and the Court's Order on Motions Practice.  Failure to timely file objections may constitute waiver of any appellate rights.

        Respectfully submitted,

        /s/ *Amy Reynolds Hay*
        Chief United States Magistrate Judge

Dated: 17 July, 2009

cc:    Hon. Terence F. McVerry
        United States District Judge

        Clay Caldwell

EM-2163
SCI Greensburg
165 SCI Lane
Greensburg, PA 15601-9103